## LOWRY, survivor, *vs.* DAVENPORT, JOHNSON & Co.

1. When this court has solemnly ruled that a suitor was deficient in diligence for the protection of his own interest, and therefore not entitled to relief, the question is *res adjudicata,* and it is not admissible to evade the decision by amending his pleadings in the superior court and alleging the exercise of full diligence, and that in due course of correct business it was neither usual nor practicable to be more diligent than he was.

2. To repeat by amendment a charge of fraud already adjudicated upon in the same case, is idle and unprofitable.

   April 13, 1888.

*Res adjudicata.* Amendment. Pleadings. Diligence. Fraud. Before Judge MARSHALL J. CLARKE. Fulton superior court. September term, 1887.

Reported in the decision.

FRANK A. ARNOLD, for plaintiff.

B. F. ABBOTT, for defendant.

BLECKLEY, Chief Justice.

A partnership consisting of several persons was formed and did business under the name of Davenport, Johnson & Co. The partnership term commenced November 1st, 1880, and ended by limitation on the 1st of November, 1883. On the 2d of August, 1883, one of the partners, Voorhis by name, executed his promissory note, payable to the firm or order, for a certain sum, and endorsed that note in the firm name, and negotiated it to Lowry & Co. for the benefit of the firm. This note matured at the end of three months from its date. Upon its maturity, which was November 5th, after this partnership had expired by its own limitation, a portion of the money was paid, and for the balance it was arranged between Messrs. Lowry and Voorhis that another similar note at thirty days should be executed by Voorhis. The preparation of that note was

left with him; and instead of making a note like the first, he made one payable directly to Lowry & Co., not adapted for the endorsement of the firm, and signed that note himself, without having it endorsed by any one. The delivery was made to a clerk in the bank,—not to one of the Messrs. Lowry, and it was not observed that it was a note unlike the first. Voorhis, in handing it to the clerk, said that it had been arranged with Mr. Lowry and that it was all right. That was on November 5th. On November 25th, a bill was filed by one of the partners against the other partners, to settle up the firm affairs of Davenport, Johnson & Co., and a receiver was prayed for, and on the 30th of November the receiver was appointed. All the assets of the firm went into the hands of this receiver, as may be inferred from the record. Messrs. Lowry communicated with the receiver, and informed him that they had a demand against the partnership. He expressed some surprise, and said he had no account of it; and upon their referring to this second note, they supposing that it had the endorsement of the firm upon it, they found that it had no such endorsement; and that was their first intimation of the omission. That note matured on the 8th of December, and at that time they had knowledge that it was not endorsed, that it was the individual note of Voorhis, without endorsement. They nevertheless extended the time of payment, and accepted from Voorhis a third note executed by himself alone, payable twelve days after date. When the twelve days expired, the money was not paid, and never has been paid; and so on April 3d, 1884, Lowry & Co. intervened by petition *interesse suo* in the bill filed to wind up the partnership affairs, and by their petition they alleged most of these facts. On the 2d of March, 1886, they amended their petition, and by that amendment they alleged with reference to the third note these further facts:

" On December 8th, 1883, said Voorhis came to complainants and represented to them and stated positively that he had bought out the entire business of Davenport, Johnson & Co., and would continue

the business at the same place on his own account, and was then taking stock, and would in a few days pay complainants the said $1,000, and requested complainants to allow him to leave his memorandum note for the sum due at twelve days; and solely upon the faith of these representations, which were false and so known at the time to said Voorhis to be false, complainants allowed him to do so."

It will be observed that at the time this transaction occurred, this firm had no existence, having expired by its own limitation; that there was a bill pending to settle up its affairs, and that all of its assets were in the hands of a receiver, and that Messrs. Lowry knew it, because they had conferred with the receiver while they had the second note in their hands, before its maturity, and had ascertained from him that he knew nothing about it; and that led to their looking into the matter and discovering that it was not endorsed as they had supposed. Upon the original petition and this first amendment, the cause was tried in the superior court, and resulted in a decree in favor of Messrs. Lowry for the amount of their claim, which decree was rendered on March 4th, 1886. That was brought to this court by Davenport, Johnson & Co. and reversed, this court ruling as follows: " Where one member of a firm gave to a bank his individual note for $2,500, endorsing it with the firm name, and thereafter paid $1,500, and twice renewed the note for $1,000 in his own name and without the endorsement of the firm, equity would not thereafter aid the creditor, either by reinstating the original note with a credit thereon, or by reforming the note last given by having it endorsed by the firm, and in either event decreeing payment by the firm. Reasonable diligence by the bankers or their agent who twice took a renewal of the note would have discovered the truth, and equity will not relieve them from the results of their own *laches*." *Davenport, Johnson & Co. vs. Lowry*, 78 *Ga*. 89.

The case being reversed and sent back to the superior court, the petitioners filed a second amendment, in which they alleged, in substance, that this court was mistaken

in holding that they had not used due diligence; their amendment being as follows:

"Complainants amend their bill and say that they used all diligence in the transactions of the renewal with said Voorhis, and that by the use of reasonable diligence they could not have protected themselves against the omission of the endorsement from the note of November 5th, 1883, of the firm of Davenport, Johnson & Co.; that the transaction was left to Mr. Voorhis to draw a new note just as the first one was, and he drew it and did not return it to the complainant in person, but handed it to one of the clerks and stated to the clerk that he had arranged the matter with Mr. R. J. Lowry, and that it was all right, and the young man having confidence in Mr Voorhis's integrity and veracity, as he had a right to have in view of the dealings with Voorhis before that time, filed the note amongst the papers of the bank, and it is not the custom of banks—for it is impracticable—to allow complainants in person to inspect each paper filed and entered, for they amount to several hundred each day, and good business does not require nor admit complainants to inspect personally each paper passed into the bank; and no question came up as to the papers until this bill was filed, and complainants stated to the receiver that they had a claim against the firm, and when the receiver informed complainants he had no trace of it, complainant had the note looked up, and for the first time discovered that the endorsement was not upon it; and complainants say that, by the answer of said Voorhis now of file in this case, it is admitted that said endorsement of said firm was left off by mere inadvertence on his part, and was to have been entered upon the new note just as it was upon the first one; and complainant says he will be able to show that they exercised all proper diligence in conduct of this transaction, under the circumstances peculiar to this transaction. Complainant says that the note of December 8th, 1883, was taken without the endorsement, because he relied solely upon the statement of Voorhis that he had bought out the entire business of Davenport, Johnson & Co., which was worth about twenty thousand dollars or other large sum; and said statement was false, and complainants were thereby deceived and defrauded."

This amendment refers to the answer of Voorhis, which answer was filed October 24th, 1887 just two days before this amendment was filed. That answer does state that it was an inadvertence, but the answer fails altogether to state that this third note was taken upon the false representation alleged in the first amendment. The allegation of the false representation was in the first amend-

ment at the time Mr. Voorhis made this answer to which the complainants refer in their second amendment; and Mr. Voorhis does not admit that he made any such representation, and there is no allegation that he did make it, except a repetition of that which was in the first amendment; the same that was in the bill when it came here before. So that allegation has been adjudicated,—the allegation of fraud in Voorhis at the time the third note was given; it is not new matter that has come into the bill since the former adjudication, but was in it at the time of that adjudication.

And what does it amount to? Voorhis came there and represented that he had bought out these assets. The Messrs. Lowry knew the assets were in the hands of a receiver; that they had been seized by legal process; and of course it was very easy to verify the representation. If he had bought them out, he must have bought them from the receiver. There could have been no one else to sell them. So that if they relied upon the representation, they ought to have verified it; because they knew of the pending bill, and of the appointment of the receiver. We do not think that this second amendment varies the case with regard to the fraud in any respect; and the whole sum and substance of the second amendment, when you come to analyze it, is a sort of traverse of the former ruling of this court, that Messrs. Lowry were chargeable with diligence, and had not exercised it; this is the amount of it. And we have no alternative, whether the first decision was right or wrong, but to affirm the judgment dismissing this petition as amended, upon demurrer; and we so do. The head-notes generalize the legal substance of this opinion.

Judgment affirmed.